Malley *v.* American Indemnity Co., Appellant.

Argued January 30, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

218

*Frank W. Melvin,* with him *Michael F. Donnelly* and *Bernard J. O'Connell,* for appellant.—The unquestioned fact is that, at the time of the issuance of the policy, appellee was not the "unconditional and sole owner" nor was it a fact that the car was not encumbered by any lien or mortgage, being bailed to Hare & Chase for a balance due. That this is not unconditional and sole ownership, has been decided by our own appellate courts: Goldberg v. Ins. Co., 82 Pa. Superior Ct. 302.

Before a person can elect, he must have knowledge of the facts upon which he elects. Surely it cannot be contended that, if the fraudulent and false statement which induced the issuance of the policy also induced the company to undertake a defense at a time when it had no knowledge as to the falsity of the statement, it is thereafter bound under the contract as an affirmance of it: Fairbanks C. Co. v. Accident Co., 133 S. W., 664; Patterson v. Adan, 138 N. W. 281.

*J. Julius Levy* of *Kaufman, Mattes & Levy,* with him *P. E. Kilcullen* and *Kelly & Kennedy,* for appellee.— The policy itself shows that so far as concerns the personal liability clause, the company did not intend to limit its protection to persons who were sole and unconditional owners of cars: Trustee v. Ins. Co., 93 Pa. Superior Ct. 242.

Insurance was issued to plaintiff not as sole owner but "as his interest may appear": Filbert v. Filbert, 9 Pa. C. C. R. 149; Hubbard v. Indemnity Co., 87 Pa. Superior Ct. 483; Stetson v. Ins. Co., 4 Phila. 8; Swoope v. Ins. Co., 87 Pa. Superior Ct. 349; Aldous v. Ins. Co., 65 Pa. Superior Ct. 619.

Even had there been misrepresentations in the issuing of the policy this was rather late in the day to try to take advantage of them. If the test of sole ownership so vitally affected the personal liability clause as to make the difference between a valid and a void policy, there must have been some duty upon the company to use reasonable diligence to find out whether the policy was in force or not before proceeding to take Malley's defense of the May suit out of his hands into its own.

Relief of declaratory judgment is appropriate: Girard Trust Co. v. Motor Co., 291 Pa. 507.

OPINION BY MR. JUSTICE SADLER, April 22, 1929:

A judgment in excess of $5,000 was recovered against appellee as damages for personal injuries, the result of a collision between appellee's car and that of the injured person. Appellee was insured under a personal liability contract, and the insurance carrier was duly notified of the action against him. It appeared and undertook the entire defense of appellee's liability. After verdict for plaintiff it did not prosecute its motion for a new trial, and when payment on the policy was demanded it denied all liability thereunder, on the ground that appellee was not the sole owner of the car, as warranted, but held it under a bailment lease.

Appellee then filed a petition for a declaratory judgment under the Act of June 18, 1923, P. L. 840. In the petition all the facts were reviewed. The material parts of the policy read as follows: "The Indemnity Exchange of America, agree to indemnify Leon A. Malley and/or Kathryn L. Malley as their interests may appear......
Against loss and/or expense by reason of the liability imposed by law upon the insured for damages on account of bodily injuries and/or death accidentally suffered, by any person or persons, other than employees of the insured, by reason of the ownership, maintenance and/or use of the automobile...... The insured warrants, and this contract shall be void if the insured con-

ceals or misrepresents the interest of the insured in the property,...... The insured upon the occurrence of any accident, in any way relating to any automobile insured hereunder, shall send immediate written notice thereof with the fullest information...... If suit be brought against the insured to enforce a claim for damages covered by this contract, the insured shall forward immediately to The Indemnity Exchange of America, every summons or other process and every other paper as soon as the same shall have been served on the insured. The Indemnity Exchange of America shall defend such suits in the name and on behalf of the insured. The expense of such defense shall be treated as a loss under the contract. The insolvency or bankruptcy of the insured shall not release The Indemnity Exchange of America...... The insured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceedings, or incur any expense, or settle any claim, without the written consent of attorney-in-fact, previously given."

The contention of the appellee may be stated in this manner,—that while ordinarily actual payment on an indemnity policy may be necessary before recovery, defendant, in assuming entire charge of the litigation adopted the insured's liability and payment should be made at once. Otherwise, as appellee's petition averred, he could not pay or do anything in relief of the injured plaintiff's damages and defendant would escape its contract liability unless the question was determined whether the insurance policy was a valid, binding contract with immediate liability thereunder. As the judgment against appellee in the damage case was a continuing liability, it could always be collected if he came into funds, hence he had a decided interest in being relieved of this outstanding burden, against which he believed he was protected by this policy, at least to the extent of $5,000. Appellant admits that if appellee is entitled to relief it is entitled to it under the Declaratory

Judgments Act, but denies the right to relief because he has not paid the judgment, and the policy is unenforceable from a breach of the warranty of ownership. The court below granted relief.

Section 3 of the Declaratory Judgments Act reads: "A contract may be construed either before or after there has been a breach thereof." In Girard Trust Co., Agent, v. Tremblay Motor Co., 291 Pa. 507, 525, a dispute over the effect of a statute on a lease, we said in an opinion by the Chief Justice that the prime purpose of this act was to render "practical help" in controversies. Continuing, the Chief Justice said: "Had the parties seen fit, they could have had the help of a judicial declaration of their respective rights and liabilities before taking a definite stand amounting to an ultimatum on each side and asking for a declaratory judgment on that state of fact." Here, if appellant's legal position is sound, plaintiff could not have asserted his right until he had paid the judgment, and as he is without the means to do this, the insurance carrier is relieved from making payment. Such an advantage, in connection with appellee's contention as first above stated, the law will not countenance, unless compelled to, and as there is no objection from any source all questions may as well be determined in this proceeding as any other.

The questions are purely ones of law. Must appellee pay before proceeding against the insurance company, and was there a breach of warranty, or, if such were the case, is appellant estopped from asserting it?

There are two types of indemnity insurance, sometimes called indemnity against liability or "liability contracts" and indemnity against damage or "indemnity contracts." In the first class, the liability of the insured determines enforceability, in the other the policy is only enforceable *when the insured has sustained actual loss,* as by paying a judgment against him coming within the scope of the policy. The class into which particular policies fall depends on the intention of the par-

ties as shown by their contract: Pfeiler v. Penn Allen P. Cement Co., 240 Pa. 468; Fritchie v. Millers Extract Co., 197 Pa. 401.

Where the policy, indemnifying insured against loss arising out of legal liability, provides that the insured shall immediately notify the company in case of injury, and the company will defend all suits growing out of injuries, in the name of insured, and insured will not settle any claim without consent of the company, it is usually held to be a *policy of indemnity against liability* for damages or an indemnity against liability, *and is not a mere contract of indemnity against damages:* Fentress v. Rutledge, 140 Va. 685, 127 S. E. 668; Blanton v. Cotton Mills, 103 Kan. 118, 172 Pac. 987, L. R. A. 1918E 541; Ravenswood Hospital v. Maryland Casualty Co., 280 Ill. 103, 117 N. E. 485, and cases cited therein: 48 L. R. A. (N. S.) 184, 36 C. J. 1057. Where the policy contains a clause requiring an actual payment of money by the insured, then of course no liability attaches unless a monetary loss has actually been sustained, under the plain words of the contract: Pfeiler v. Penn Allen Cement Co., 240 Pa. 468; Boling v. Ashbridge, 111 Okla. 66, 238 Pac. 421; Combs v. Hunt, 140 Va. 627, 125 S. E. 661, and the numerous cases there cited. But even in the latter case, an action against the company has been allowed before payment, where the company has actually come in and defended the suit: Patterson v. Adan, 119 Minn. 308, 138 N. W. 281.

The principle is thus adequately expressed in the last-named case: "By undertaking the defense the company elected to treat plaintiff's cause of action, if he had any, as covered by its contract; and when it substituted itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured. The undertaking to defend is of no value, and may be of great danger, to the assured, where he thus abandons all control of the suit to the com-

pany, if it does not mean that whatever liability is established shall be discharged. The company admits that where the assured is perfectly solvent the practice of the company is to carry the defense to a successful issue by paying the judgment without waiting for the assured to pay it. It is even more important to an assured who is in financial stress that no judgment be allowed to stand unsatisfied against him than it is to one who has abundant means to satisfy it with." Consequently, in such cases, after recovery of a judgment against the insured, the party injured may have a remedy against the company by garnishee process or by resort to a suit in equity: Fentress v. Rutledge, supra; Reilly v. Linden, 151 Minn. 1, 186 N. W. 121; Capelle v. U. S. Fidelity Co., 80 N. H. 481, 120 Atl. 556; Huddy on Automobiles (8th ed.), section 1051.

Loss does not have an inflexible meaning and may consist of many different situations of varying gradations. Voluntary or involuntary separation from one's money is not the only criterion of loss. Any shrinkage in value of estate or property may on proper occasions be rightfully so termed. Any depreciation or depletion of property values, as well as the destruction of all property value through judicial sale or otherwise would likewise come within the definition; the concrete result of these factors, as it affects the owner, is a loss. See Schambs v. Fidelity Casualty Co., 259 Fed. 55 and 263 Fed. 895. Therefore, following the above line of decisions, under a policy such as we have before us, we hold there is a potential loss, though money may not have been actually paid; the insured may sue the company directly after judgment and before he pays anything, or his creditor may institute garnishment against the company. The presence of these direct remedies would not affect the right to a declaratory judgment, for reasons unnecessary to state.

The accident occurred on August 30, 1926, and the damage case was tried January 10, 1928. At the trial,

appellant appeared and actually engaged in the defense, and it was not until after the suit was lost that it abandoned the case and claimed plaintiff had violated the absolute warranty of the policy concerning total ownership of the car. It further stated it had no knowledge of the falsity of the statements made by the plaintiff until after the trial of this case. Where an insurance company, under an indemnity contract, takes charge of the defense of an action on which liability rests, it will be estopped from thereafter questioning the claim either because it was beyond the terms of the policy or because the latter was procured by a breach of some warranty: Fairbanks v. London Guaranty & Accident Co., 154 Mo. App. 327, 133 S. W. 664; Globe Nav. Co. v. Casualty Co., 39 Wash. 299, 81 Pac. 826; Patterson v. Adan, supra; Frank v. Casualty Co., 175 Cal. 293, 185 Pac. 927; Tulare v. Surety Co., 43 Cal. App. 315, 185 Pac. 399; Royle v. Fidelity Co., 142 S. W. 438; Utterback v. Ins. Co., 184 N. Y. Supp. 862, 193 App. Div. 646, (affirmed in 135 N. E. 913); American Indemnity Co. v. Fellbaum, 225 S. W. 873. When an insurance company or its representative is notified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy. The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case. The insurance carrier is not placed in any disadvantageous situation, especially as the lack of ownership did not contribute to the loss. The estoppel to assert the breach of warranty as to title, is no higher in right than an estoppel generally to deny that the claim came under the policy. In effect, both are of equal merit. With a little diligence and within a brief time, the carrier could have procured the exact knowledge on which it now relies, and in most

cases may similarly prepare a defense. Here an inquiry from public officials, at the State Capital, would have revealed plaintiff's exact relation with regard to ownership. With these facts before it, had they been deemed sufficient, it could have declined to defend the case, resting its right on the supposed breach of warranty; in deciding what course it should pursue, it is guided as any person confronted by similar circumstances; but, once having made its decision, the rights of others in relation thereto cannot be prejudiced. The court below was amply warranted in entering the judgment here appealed from.

Judgment affirmed.