## Campbell v. Philadelphia-Bridgeton Bus Company et al.

*A. Friedman,* for rule; *G. J. Schorr,* contra.

FINLETTER, P. J., Dec. 4, 1929.—The plaintiff recovered judgment in an action for damages for personal injuries and issued attachment execution against the casualty company who had insured the defendant against loss occasioned by the operation of a certain automobile.

The pertinent facts are undisputed. They appear by the casualty company's answers, as garnishee, to interrogatories.

The garnishee's position is that, under the terms of the policy, no liability attaches to it until the insured defendant has actually paid damages assessed against him for negligence in the operation of the car.

The plaintiff contends that liability arose under the policy when judgment was given against the insured.

Whether or not a policy protects against liability only or against liability followed by payment depends upon the intention of the parties as shown by the contract.

The pertinent clauses in the policy before us are these:

(1) "The company agrees to indemnify the assured against loss or expense arising . . . from claims upon the assured for damages on account of bodily injuries or death accidently suffered . . . by reason of the . . . use . . . of any of the automobiles, etc.

"No action shall lie against the company to recover for any loss or expense covered by this policy, arising or resulting from claims upon the assured for damages, unless it shall be brought by the assured for loss or expenses actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after payment of such loss or expense."

Accidents shall be immediately reported in writing to the company.

(2) "If suit is brought against the assured to enforce a claim for damages . . . the assured shall immediately forward to the company every summons . . . as soon as . . . served upon the assured, and the company will at its own cost defend such suit in the name and on behalf of the assured. The assured whenever requested by the company shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at assured's own cost without the written consent of the company previously given. . . ."

(3) "The bankruptcy or insolvency of the named assured shall not relieve the company from payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If because of such bankruptcy or insolvency an execution on a judgment for damages against the named assured is returned unsatisfied in an action brought by the injured . . . an action may be maintained by the injured person . . . against the company subject to the terms of this policy for the amount of such judgment not exceeding the amount of this policy."

The company exercised its right to defend the action for damages and appeared by its own counsel, who conducted the trial.

The plaintiff caused a writ of *fi. fa.* to be issued against the defendant, and this was returned "*nulla bona.*"

What was the intent of the parties? We have the benefit of many decisions in similar cases. No difficulty arises in such cases as Pfeiler *v.* Penn Allen Co., 240 Pa. 468, where the only provision on the subject of liability was "no action shall lie against the company . . . unless for loss actually sustained and paid in money."

Frequently, however, the language used is less explicit and it becomes necessary to consider the document more particularly in the effort to ascertain the essential fact, to wit, the intention of the parties. The ordinary rules for the interpretation of contracts, of course, apply, and, in particular, that which provides that where a contract is prepared by one of the parties, doubtful language is to be interpreted against the draftsman: 32 Corpus Juris, 1147; Krebs *v.* Philadelphia Life Ins. Co., 249 Pa. 330; McGinnis *v.* St. Paul, etc., Ins. Co., 38 Pa. Superior Ct. 390.

A similar question was before us in Moses *v.* Ferrel, and passed upon later by the Superior Court [97 Pa. Superior Ct. 13]. Since then the Supreme Court has also passed upon it in Malley *v.* American Indemnity Co., 297 Pa. 216, and Rose *v.* Zurick, etc., Co., 296 Pa. 206. Earlier cases were Pfeiler *v.* Penn Allen Co., 240 Pa. 468, and Fritchie *v.* Miller's Extract Co., 197 Pa. 401.

Necessarily each case was governed by the language of the policy involved. All have one or more of three classes of provisions: (1) A general clause defining liability; (2) provisions that the insurance company shall have control of the action brought against the assured, of settlement, and of negotiations with the injured plaintiff, similar to clause (2) in the policy before us; (3) a provision giving the injured plaintiff an action against the insurance company if the defendant in the damage suit is insolvent or bankrupt—like clause (3) of the policy before us.

The variations of the first provision are many, from one expressly requiring payment of money to raise liability to phrases indicating clearly a liability on the policy immediately upon judgment against the insured in the damage suit.

In Pfeiler *v.* Penn Allen Co. *(supra)* there was nothing but the first clause, which expressly based liability upon payment. This clear expression was not clouded or made doubtful by clauses like (2) and (3) above.

In Rose *v.* Zurick Gen., etc., Co., 296 Pa. 206, clause (1) was an insurance "against loss from liability imposed by law upon the assured for damages on account of bodily injuries." The policy also contained clause (3) above. The report contains no reference to the existence of such a clause as (2). It was contended by the insurance company that it was liable only on payment.

Mr. Justice Kephart said: "No right of action accrues, in a simple contract of indemnity, until the indemnitee has suffered a loss against which the cove-

nant runs. The party protected cannot recover until he has actually been damnified. But though the present policy was 'to indemnify the insured against loss,' paragraph (3) broadens the normal effect of these words. . . . By the words 'insolvency or bankruptcy do not release the company from payment, . . . but an action may be maintained by the claimant,' the contract *clearly recognizes indemnity alone was not intended;* if loss was made certain by suit, . . . yet, as the insolvency or bankruptcy of the insured might defeat the purpose of the hazard either through payment to him directly or to his trustee, it was no doubt because of this possibility the right to recover under the policy was in positive terms transferred from the insured to the claimant."

We gather from the above that it was the opinion of the court that clause (1), taken alone, imposed a liability on the insurance company only when the insured suffered a loss by payment of the judgment, but that the effect of clause (3) was to "broaden the normal effect of clause (1)." But it was held that clause (1) was also for the benefit of the insured and protected him against the "continuing liability of the judgment." *After judgment, "the insured could sue the company."* If the insured were bankrupt, "the claimant could sue the company."

In Malley *v.* American Indemnity Co. *(supra),* clause (1) read: The company "agree to indemnify (the insured) . . . against loss or expense by reason of the liability imposed by law upon the insured for damages on account of bodily injuries or death, etc." The policy also contained a clause like clause (2) above. The opinion does not speak of a bankruptcy clause (3). This case was heard upon a petition by the assured under the Declaratory Judgments Act. The assured had not paid the judgment, and it was contended by the company that its liability on the policy did not arise until actual payment. It was held by the Supreme Court that the effect of clause (2) was to impose liability under the policy immediately upon the rendition of the judgment and without payment having been made.

Mr. Justice Sadler said:

"There are two types of indemnity insurance, sometimes called indemnity against liability or 'liability contracts' and indemnity against damage or 'indemnity contracts.' In the first class, the liability of the insured determines enforceability; in the other, the policy in only enforceable *when the insured has sustained actual loss,* as by paying a judgment against him coming within the scope of the policy. The class into which particular policies fall depends on the intention of the parties as shown by their contract: Pfeiler *v.* Penn Allen P. Cement Co., 240 Pa. 468; Fritchie *v.* Miller's Extract Co., 197 Pa. 401.

"Where the policy, indemnifying insured against loss arising out of legal liability, provides that the insured shall immediately notify the company in case of injury and the company will defend all suits growing out of injuries, in the name of the insured, and insured will not settle any claim without consent of the company, it is usually held to be a *policy of indemnity against liability* for damages or an indemnity against liability, *and is not a mere contract of indemnity against damages:* Fentress *v.* Rutledge, 140 Va. 685, 125 S. E. Repr. 668; Blanton *v.* Cotton Mills, 103 Kan. 118, 172 Pac. Repr. 987, L. R. A. (1918 *E*) 542; Ravenswood Hospital *v.* Maryland Casualty Co., 280 Ill. 103, 117 N. E. Repr. 485, and cases cited therein; 48 L. R. A. (N. S.) 184, 36 Corpus Juris, 1057. Where the policy contains a clause requiring an actual payment of money by the insured, then, of course, no liability attaches, unless a monetary loss has actually been sustained, under the plain words of the contract: Pfeiler *v.* Penn Allen Cement Co., 240 Pa. 468; Boling *v.* Ash-

bridge, 111 Okla. 66, 238 Pac. Repr. 421; Combs v. Hunt, 140 Va. 627, 125 S. E. Repr. 661, and the numerous cases there cited. But even in the latter case, an action against the company has been allowed before payment where the company has actually come in and defended the suit: Patterson v. Adan, 119 Minn. 308, 138 N. W. Repr. 281.

"The principle is thus adequately expressed in the last-named case: 'By undertaking the defense, the company elected to treat plaintiff's cause of action, if he had any, as covered by its contract; and when it substituted itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured. The undertaking to defend is of no value, and may be of great danger, to the assured, where he thus abandons all control of the suit to the company if it does not mean that whatever liability is established shall be discharged. The company admits that where the assured is perfectly solvent the practice of the company is to carry the defense to a successful issue by paying the judgment without waiting for the assured to pay it. It is even more important to an assured who is in financial stress that no judgment be allowed to stand unsatisfied against him than it is to one who has abundant means to satisfy it with.' Consequently, in such cases, after recovery of a judgment against the insured, the party injured may have a remedy against the company by garnishee process or by resort to a suit in equity: Fentress v. Rutledge, supra; Reilly v. Linden, 151 Minn. 1, 186 N. W. Repr. 121; Capelle v. U. S. Fidelity Co., 80 N. H. 481, 120 Atl. Repr. 556; Huddy on Automobiles (8th ed.), § 1051."

It was conceded in the above case that, "ordinarily, actual payment on an indemnity policy may be necessary before recovery," but it was argued that the insurance company, by assuming entire charge of the litigation, adopted the insured's liability. This proposition was affirmed by the Supreme Court.

In Moses v. Ferrell, supra, the insured was "indemnified against loss occasioned by the ownership or operation" of his automobile. The policy contained clause (2). The company conducted the trial of the damage suit. It was held, under the authority of the Malley case, that the insurance company was liable.

These cases rule the case at bar. The policies differ in these respects: In Rose v. Zurick Gen., etc., Co., clauses (1) and (3) only were present, and insolvency (clause 3) was alleged. In Malley v. American Indemnity Co., clauses (1) and (2) were alone present, or at least were alone discussed. In Pfeiler v. Penn Allen Company, clause (1), expressly basing liability on "payment," was alone present. In Patterson v. Adan, 119 Minn. 308, cited with approval in the Malley case, clause (1) expressly required payment, but clause (2) was held to impose liability, if in fact the insurance company conducted the defense.

In the caes at bar, clause (1) required payment; clause (2) and clause (3) both are present.

The situation is identical with that of the Malley case, except that in the latter the basis of liability upon payment is inferential, while in the case at bar it is express. We cannot see that any logical difference exists. The effect of clause (2) upon both should be the same.

We, therefore, make the rule absolute and adjudge that the garnishee, Commonwealth Casualty Company, has in its hands moneys of the defendant, Philadelphia-Bridgeton Bus Company, in the sum of $882.91, which (less $13.50 hereby allowed the garnishee for counsel fees and costs), is subject to the plaintiff's attachment.